ANDERSON CARRIAGE CO. *v.* PUNGS.[1]    |128    49|
                                        |134    482|

DEEDS—REFORMATION—EVIDENCE.

> Defendant conveyed a parcel of land by metes and bounds, the deed reciting the same to be about an acre in quantity. He subsequently platted the tract embracing said parcel, the land conveyed forming a part of lot 21 as platted, which lot was about an acre in size. Complainant purchased from the grantee, supposing that it was acquiring title to the whole of lot 21, and afterwards filed a bill to enforce a conveyance of the remainder of the lot, claiming that the entire lot was intended to be conveyed by the original deed; and, it appearing from the direct testimony on the subject, the after-occupancy of the land, the payment of the taxes thereon, the subsequent conduct of defendant, and his various dealings in relation to the remaining property, that such was the intention of the parties, relief was granted accordingly.

Appeal from Wayne; Rohnert, J. Submitted May 8, 1901. Decided July 19, 1901.

Bill by the Anderson Carriage Company against William A. Pungs and Addie L. Pungs to reform a deed. From a decree for complainant, defendants appeal. Affirmed.

*Russel & Campbell*, for complainant.

*Barbour & Rexford*, for defendants.

LONG, J. This bill is filed to compel defendant Pungs to convey to complainant the full quantity of land which it is claimed was purchased from him by the Michigan Railway-Supply Company, the predecessor of the complainant corporation. The bill sets out, substantially, that prior to September 23, 1891, the said defendant William A. Pungs and Cyrenius A. Newcomb were owners in common of property now known as lot 21, Pungs & New-

---

[1] Rehearing denied November 4, 1901.

128 MICH.—4.

comb's subdivision of part of outlots 7 and 8, quarter section 58, 10,000-acre tract, according to the plat of said subdivision recorded August 21, 1895, in the office of the register of deeds for the county of Wayne, said lot being approximately one acre in extent; that on said 23d day of September the said defendants, William A. Pungs and Addie L. Pungs, his wife, and Cyrenius A. Newcomb, for the consideration of $3,500, conveyed to the Michigan Railway-Supply Company, a corporation organized and existing under the laws of the State of Michigan, property described as follows:

"Land in the city of Detroit, Wayne county, Michigan, described as all that part of lot 7 lying north of the Detroit & Bay City Railroad of the subdivision of section 58 of the 10,000-acre tract, commencing at the intersection of the northerly line of the Detroit & Bay City Railway right of way and the westerly line of said lot 7, and running thence northerly, on said west line of lot 7, 375 feet; thence easterly, at right angles to said westerly line, 100 feet; thence southerly, parallel to said west line, to the north line of said Detroit & Bay City Railway; and thence westerly, along the said line of said railway, to the place of beginning; the parcel hereby conveyed containing about one acre of land."

That in and by said conveyance all parties thereto supposed and intended that said conveyance should include all of what is now known as said lot 21; that, immediately upon the execution and delivery of said conveyance, the said Michigan Railway-Supply Company took possession of the whole of the property included in said lot, and thereafter treated it as its property; that afterwards, and on the 26th day of December, 1895, the said Michigan Railway-Supply Company, acting through said Newcomb as its president, and said William A. Pungs as its treasurer, conveyed a right of way along the easterly part of said lot 21 to the Anderson Manufacturing Company, a corporation owning the property adjoining said lot 21 to the north, and which corporation has since conveyed its said right in said lot 21 to the complainant.

That on March 2, 1897, the complainant, whose name was at that time the Pungs-Anderson Manufacturing Company, purchased all the property of said Michigan Railway-Supply Company, and, among others, the property known as lot 21; that it was represented to the complainant by said defendant William A. Pungs, who conducted all the transactions and was the principal managing officer of both corporations, that the said Michigan Railway-Supply Company was in fact the owner of all of said lot 21; that in estimating the value of the assets of said Michigan Railway-Supply Company, purchased by complainant, the whole of said lot 21 was included, in accordance with the representations and at the instance of said defendant William A. Pungs, and said assets were paid for on that basis; that, after said purchase was completed, the complainant took possession of all of said lot 21,—the same being in the occupation of said Michigan Railway-Supply Company,—and constructed a fence around the same, and used it for the purposes of its business, and has ever since continued to do so; that said Pungs participated in, and had general charge of, said purchase, and directed the transfer of said land and the occupation of it by complainant.

That afterwards the said Pungs severed his connection with the complainant, and his stock in complainant corporation was purchased by other parties interested in the same; that during the month of May, 1899, the complainant filed an amendment to its articles of association, in pursuance of and in compliance with the provisions of law, changing its name to the Anderson Carriage Company, by which name the complainant is now known in law; that, in the course of this change in its business affairs, it became necessary to examine the conveyances of the property held by complainant, all of which had been theretofore managed by defendant William A. Pungs, and upon such examination it was discovered for the first time that the whole of said lot 21 had not been properly conveyed by said William A. Pungs and said

Newcomb to said Michigan Railway-Supply Company, but that only the westerly 100 feet in width of said lot had been conveyed, leaving unconveyed the easterly portion of said lot, about 44 feet in width; that, upon discovering the said error, complainant applied to said William A. Pungs and said Newcomb to correct the description so as to make the samo conform to tho transfer actually made; that said Newcomb at once complied with this request, and conveyed by deed all his right, title, and interest in and to the unconveyed portion of said lot 21 to complainant; that said defendant William A. Pungs, notwithstanding tho premises, and in fraud of 'complainant's rights, has refused, and still refuses, to correct said error, and now claims to own all that portion of said lot 21 which was omitted from said conveyance, and has caused a building to be put up on adjoining land owned by him which projects over upon said unconveyed portion of said lot 21, and has leased the same to a tenant, and is attempting to withhold from complainant the ownership and possession of said land.

Complainant avers that it was at all times intended that the entire property now known as said lot 21 should be conveyed to said Michigan Railway-Supply Company, from whom complainant derives title; that a full consideration was paid for the entire lot, and that both said William A. Pungs and said Newcomb have always acted upon the supposition that such conveyance had been made; that said defendant William A. Pungs was at all times, up to and until after the purchase of said property by complainant, in the control and management of said Michigan Railway-Supply Company and of complainant, and was intrusted by all persons interested in said corporations with full management and control; that by his repeated representations and his acts in actually causing said property to be occupied and used by said Michigan Railway-Supply Company, and by complainant after it purchased tho same, and further by causing the aforesaid right-of-way deed to be executed by the Michigan Railway-Supply Company,

and himself signing the same as treasurer, and in numerous other ways, the said defendant William A. Pungs has recognized the actual ownership of this unconveyed portion of said lot 21 to have been in said Michigan Railway-Supply Company, and the complainant, as its assign, and in equity is bound to make the legal title thereto good, and that his refusal to do so is a fraud upon the complainant.

Defendant Pungs filed an answer in the nature of a cross-bill, setting up that prior to the 4th day of September, 1895, defendant and Cyrenius A. Newcomb were owners in common of lots " A " and 1 to 20, both inclusive, and lots 22 and 23, and lot 21, except that part thereof conveyed by defendant and his wife and Cyrenius A. Newcomb to said Michigan Railway-Supply Company September 23, 1891; that on the 4th day of September, 1895, Cyrenius A. Newcomb, in consideration of $100 and other valuable considerations, by quitclaim deed conveyed to defendant all of the above-described property, except that part of lot 21 then owned by said Newcomb and defendant; that, immediately after the execution and delivery of such deed, he, the said defendant, took possession of that portion of said lot 21 which had not been conveyed to the said Michigan Railway-Supply Company, and thereafter regarded and treated the same as his property; that defendant was not informed, and did not know until after the filing of the bill, that the deed from Newcomb to himself of the other property of Pungs and Newcomb did not include that portion of said lot 21; and he avers that the said part of lot 21, which was not included in said Newcomb's deed to himself, was omitted from said deed unintentionally, by the mutual mistake of Newcomb and himself. He therefore prays in his cross-bill that he may be decreed to be the owner of all that part of said lot 21 which was not included in the deed of September 23d. He further prays that said Newcomb and his wife, who are made parties defendant to the cross-bill, may be decreed to convey to him all that part of said lot 21.

The testimony in the case was taken in open court, and

tho court decreed that defendants, Pungs and wife, convey to complainant all that part of lot 21 not contained in the deed of September 23d; that, in default of the execution and delivery of the deed by said defendants, a copy of the decree be recorded in the office of the register of deeds in lieu thereof, and have all the force and effect of said deed; and that complainant recover its costs.

There is little dispute about the facts, except as to the intent of the parties to the original deed. The court below was of the opinion, evidently, that the parties intended to sell to the Michigan Railway-Supply Company one acre of land, as stated in the deed; and it is shown conclusively that one acre of land would include all the land in said lot 21. Mr. Newcomb testified that he was joint owner with defendant Pungs, and that:

"We agreed to sell the new corporation one acre of land, and the price was fixed at $3,500."

He was asked:

"*Q.* At the time you signed that deed, did you make any particular examination as to whether the description by metes and bounds carried with it the entire acre of land?

"*A.* I did not. I referred the matter entirely to Mr. Pungs. He was the manager."

Mr. Pungs was asked:

"*Q.* You heard Mr. Newcomb's testimony. Do you recollect any conversation with him with reference to buying an acre?

"*A.* No, sir.

"*Q.* What conversation do you recollect that you had with him about buying an acre, or about the amount of land that was to be deeded?

"*A.* When I had the conversation,—the only conversation that I recollect,—the records show that is what land we needed. We bought just what we needed, and no more. We needed just that piece, and no more. We had a building 300 by 75 feet, and that is five times the size of the building that they had before that. It was ample for our use in every respect."

On his cross-examination defendant was asked:

" *Q.* Isn't it true in the conversation that you had with Newcomb, and the others at the time interested in the company, that your talk was that you would sell them one acre ?

" *A.* No, sir; if there had been, we would never have said so many feet.     *     *     *

" *Q.* There was no such talk about an acre at all ?

" *A.* I do not think so.   We might have said that it was about an acre, and gave them the dimensions."

He was then examined upon the statement in the deed that the property contained about one acre.   He was asked:

" *Q.* What do you mean by the statement in the deed that the parcel hereby conveyed contained about one acre of land ?

" *A.* I did not put it in.   I asked Mr. Post [the attorney], and he said it was customary when it was anywhere near an acre."

It appears to us that the facts of this case all tend to show that the whole of lot 21 was intended to be conveyed by the deed of September 23d.   The testimony shows that, after this purchase by the Michigan Railway-Supply Company, it paid the taxes on the entire acre of land, and that Pungs and Newcomb, who owned at that time the balance of the tract, paid the taxes on the rest of the property, Pungs being at the time treasurer of the Michigan Railway-Supply Company, and paying the taxes on the lot out of the company's money; that, at the time of the consolidation of the companies, defendant was general manager; and that, within 30 days thereafter, a fence was built along the easterly line of lot 21, inclosing the entire property, and the whole lot continued to be used without any claim of ownership by defendant.   A shed along the easterly line of lot 20 was extended onto lot 21 under his direction, and other structures were built on the property.   It is admitted by both Pungs and Newcomb that, when Pungs purchased all of Newcomb's remaining interest in the property, the intention was to buy all of

that interest, aside from what had been transferred to the Michigan Railway-Supply Company; and yet in the deed from Newcomb to Pungs this part of lot 21 was not included. Defendant testified that he raised the money for the original purchase by mortgaging all of the property, except that which was sold to the Michigan Railway-Supply Company. The first two mortgages covered all of the property, except that described as conveyed to the Michigan Railway-Supply Company. The two subsequent mortgages described the property as lots 18, 19, 22, and 23, omitting the property sold to the Anderson Manufacturing Company and lot 21. Mr. Anderson, of the Anderson Carriage Company, testified that, when his company was organized, lot 21 was occupied by the Michigan Railway-Supply Company; defendant being at that time connected with that company, and also with the Anderson Manufacturing Company. Mr. Anderson stated that defendant told him that the Anderson Company had lot 20, and that the Michigan Railway-Supply Company owned lot 21; that they were of the same size, each consisting of an acre of land. Mr. Newcomb testified that it was agreed to sell the corporation an acre of land, and the deed recites that the parcel conveyed contained about one acre of land. We are satisfied from the whole record that the court below very properly decreed that Mr. Pungs convey to complainant the balance of lot 21 not conveyed in the deed of September 23d.

The decree below will be affirmed, with costs.

HOOKER, MOORE, and GRANT, JJ., concurred. MONTGOMERY, C. J., did not sit.